No. 22-1216

**In The**
# United States Court of Appeals
**For the Fourth Circuit**

Roee Kiviti and Adiel Kiviti,

Appellants,

v.

Naveen Bhatt,

Appellee.

On Appeal from the United States District Court
for the Eastern District of Virginia
Alexandria Division

Opening Brief of Appellants

Maurice B. VerStandig, Esq.
Virginia Bar No. 81556
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Appellants Roee and Adiel Kiviti*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _22-1216_          Caption: _Kiviti, et al. v. Bhatt_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Roee Kiviti and Adiel Kiviti_____
(name of party/amicus)

_____

 who is _____Appellants_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                           ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                              ☐YES ☑NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☑YES ☐NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

    There is no creditors' committee, Mr. Bhatt is the sole debtor, and Mr. Bhatt is not a corporation.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Maurice B. VerStandig                    Date:      May 9, 2022

Counsel for: Roee and Adiel Kiviti

Print to PDF for Filing

# Table of Contents

I.      Table of Contents........................................................................................ i

II.     Table of Authorities .................................................................................. ii

III.    Jurisdictional Statement........................................................................... 1

IV.     Statement of Issue Presented and Applicable Standard of Review............... 2

V.      Statement of the Case .............................................................................. 2

VI.     Summary of Argument .............................................................................. 4

VII.    Argument ................................................................................................ 5

        a.  A Regulatory Disgorgement Stemming from Dishonesty is
            Nondischargeable ............................................................................. 5

        b.  The District Court Erred in Considering the Distinction
            Between Loss Causation and Transaction Causation  ...................... 14

VIII.   Conclusion ............................................................................................ 17

IX.     Request for Oral Argument  ................................................................... 17

X.      Signature .............................................................................................. 17

# Table of Authorities

**Cases**

*Authentic Home Improvements v. Mayo*, 2006 WL 2687533 (D.C. Super. Ct. June 2, 2006) ....... 6

*Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001) ........................................... 14

*Cohen v. de la Cruz*, 523 U.S. 213 (1998) ................................................................... 7, 8, 10, 13

*Field v. Mans*, 516 U.S. 59 (1995) .............................................................................................. 8

*In re Carpenter*, 453 B.R. 1 (Bankr. D.D.C. 2011) ............................................................... 11, 12

*In re Chui*, 538 B.R. 793 (Bankr. N.D. Cal. 2015) .................................................................... 14

*In re Johnson*, 312 B.R. 810 (E.D. Va. 2004) ............................................................................. 2

*In re Johnson*, 960 F.2d 396 (4th Cir. 1992) .............................................................................. 2

*In re Levine*, 337 B.R. 840 (Bankr. E.D. Va. 2005) ............................................................. 11, 13

*In re Lovato*, 442 B.R. 810 (Bankr. D.N.M. 2011) ................................................................... 15

*In re Pleasants*, 219 F.3d 372 (4th Cir. 2000) ................................................................. 9, 10, 13

*In re Rickel & Associates, Inc.*, 272 B.R. 74 (Bankr. S.D.N.Y. 2002) ....................................... 14

*In re Southeast Hotel Prop., L.P.*, 99 F.3d 151 (4th Cir. 1996) .................................................. 2

*In re Young*, 91 F.3d 1367 (10th Cir. 1996) .............................................................................. 15

*Livid Holdings Ltd, v. Salomon Smith Barney, Inc.*, 416 F.3d 940 (9th Cir. 2005) ..................... 15

*Marzullo v. Molineaux*, 651 A.2d 808 (D.C. 1994) ..................................................................... 6

*Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552 (1990) .................................. 8

*Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87 (2d Cir. 2001) ................. 14


**Statutes**

11 U.S.C. § 101 .......................................................................................................................... 8

11 U.S.C. § 301 .......................................................................................................................... 3

11 U.S.C. § 523 ................................................................................................................. *passim*

11 U.S.C. § 727 .......................................................................................................................... 5

28 U.S.C. § 157 .......................................................................................................................... 1

28 U.S.C. § 158 .......................................................................................................................... 1

**Rules**

Federal Rule of Appellate Procedure 4 .......................................................................................... 1

Federal Rule of Bankruptcy Procedure 8002 ................................................................................. 1

**Regulations**

16 DCMR 800.1 ..................................................................................................................... *passim*

## III. Jurisdictional Statement

The United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") enjoyed subject matter jurisdiction over the instant case pursuant to the allowances of Section 157 of Title 28 of the United States Code. Specifically, the proceeding below concerned, *inter alia*, a "determination[] as to the dischargeability of [a] particular debt[]," and was thusly a core proceeding. 28 U.S.C. § 157(b)(2)(I). Roee and Adiel Kiviti ("Messrs. Kiviti," or the "Appellants") brought an adversary proceeding to establish an obligation of Naveen Prasad Bhatt ("Mr. Bhatt" or the "Appellee") was not dischargeable as part of Mr. Bhatt's bankruptcy.

This Honorable Court enjoys jurisdiction over this appeal pursuant to the allowances of Section 158 of Title 28 of the United States Code. Specifically, the order of the United States District Court for the Eastern District of Virginia (the "District Court") affirming the Bankruptcy Court's holding, and dismissing Messrs. Kiviti's appeal, is a final order and judgment of the District Court. 28 U.S.C. § 158(d)(1).

The order from which this appeal is taken was entered on February 9, 2022. A notice of appeal was filed on February 19, 2022, and this appeal is thusly timely in nature. Fed. R. App. P. 4(a)(1)(A).

## IV.    Statement of Issue Presented and Applicable Standard of Review

The loan issue presented on appeal is whether an individual may discharge in bankruptcy the obligations attendant to a regulatory disgorgement if the monies to be disgorged were obtained by false pretenses.

Inasmuch as the sole issue on appeal is a pure question of law, this appeal is subject to a *de novo* standard of review. *In re Johnson*, 312 B.R. 810, 817 (E.D. Va. 2004) ("Whereas a bankruptcy court's findings of fact are reviewed only for clear error, its conclusions of law are subject to de novo review.") (citing *In re Se. Hotel Prop., L.P.*, 99 F.3d 151, 154 (4th Cir. 1996); *In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992)).

## V.    Statement of the Case

Messrs. Kiviti allege the Appellee fraudulently held himself out as a licensed contractor within the District of Columbia when, in fact, he never held any such licensure at any time relevant. Appendix at p. 9. In express reliance upon this false representation, the Appellee's services were engaged as Messrs. Kiviti sought to renovate a parcel of real property. *Id*. The Appellee was paid $58,770.00, by Messrs. Kiviti, for work to be completed on the subject property; but for the false representation, Messrs. Kiviti allege they would not have engaged – much less paid – the Appellee.  Appendix at pp. 9-11.

Under District of Columbia law, an unlicensed contractor is required to disgorge all monies received in exchange for a promise to perform work on property, and there is expressly no allowance of any setoff for the value of work actually performed (no matter how good or bad). *See* 16 DCMR 800.1. This provision of the District of Columbia's regulatory scheme is openly recognized as being intentionally draconian in nature, so as to deter unlicensed contractors from doing business in the city. Appendix at p. 12.

Upon learning the Appellee was an unlicensed contractor, Messrs. Kiviti brought suit in the Superior Court for the District of Columbia, and therein secured a clerical default against the Appellee. *Id*. The Appellee then filed a petition for relief, pursuant to Section 301 of Title 11 of the United States Code, and the pending litigation was accordingly stayed before a default judgment could be entered. *Id*.

Within the Appellee's bankruptcy, Messrs. Kiviti accordingly commenced an adversary proceeding to (i) fix and determine the Appellee's debt to Messrs. Kiviti; and (ii) establish the nondischargeable nature of that obligation pursuant to Section 523(a)(2)(A) of Title 11 of the United States Code. Appendix at pp. 8-14. The Appellee brought a motion to dismiss the subject complaint, which was granted in part and denied in part, with the nondischargeability claim being dismissed but the claim to fix and determine the Appellee's obligation to Messrs. Kiviti being permitted to proceed. Appendix at pp. 56-57.

There being no judicial economy in determining a debt that will be discharged to the extent not paid through a bankruptcy proceeding (in which Messrs. Kiviti's proof of claim has not been the subject of any objection), and recognizing the Superior Court of the District of Columbia would have jurisdiction to fix and determine the debt following the close of the Appellee's bankruptcy, the parties then jointly stipulated to dismissal of the monetary claim without prejudice to the Superior Court action. Appendix at pp. 62-64. This joint stipulation was undertaken with the express design of permitting the Bankruptcy Court's order on nondischargeability to become a final order and to accordingly be ripe for appellate review. *Id*. A timely appeal was then filed. Appendix at pp. 65-67.

This appeal follows an order affirming the judgment below, entered by the United States District Court for the Eastern District of Virginia. Appendix at p. 120. That order was appealed ten days after its issuance. Appendix at p. 125.

## VI.   Summary of the Argument

Title 11 of the United States Code (the "Bankruptcy Code") is express that any monetary liability stemming from the propagation of falsity is nondischargeable in a proceeding under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 523(a)(2)(A). The District of Columbia Code of Municipal Regulations (the "DCMR") requires an unlicensed contractor to disgorge, *en toto* and without setoff, all monies received as and for the promise and/or performance of contracting work. *See* 16 DCMR 800.1.

Where such a disgorgement obligation follows a contractor having made false representation as to his licensure, the disgorgement obligation is accordingly nondischargeable in nature.

## VII.   Argument

### a. A Regulatory Disgorgement Stemming from Dishonesty is Nondischargeable

The plain language of the Bankruptcy Code, and the topical precedent of the Supreme Court of the United States, make clear that where a debtor's monetary obligation stems from false pretenses, false representations, and/or actual fraud, those obligations cannot be discharged in bankruptcy. In the instant case, Messrs. Kiviti have plainly alleged they only engaged the Appellee's services because of his false pretenses and representations as to being a licensed contractor. Under District of Columbia law, the Appellee is bound to disgorge the whole of the monies he received on account of those false pretenses and representations, since he was not actually a licensed contractor. And, as extrapolated upon *infra*, the resulting obligation of the Appellee to Messrs. Kiviti is accordingly nondischargeable in nature.

Analysis of the legal issue herein necessarily starts with the language of the Bankruptcy Code itself, which provides, in pertinent part:

> A discharge under section 727 … of this title does not discharge an individual debtor from any debt … (2) for money… to the extent obtained by-- (A) false pretenses, a false representation, or actual fraud,

other than a statement respecting the debtor's or an insider's financial condition…

11 U.S.C. § 523(a).

Concerning the first of the two statutory rigors, Messrs. Kiviti maintain the Appellee is indebted to them "for money," because of his violation of 16 DCMR 800.1. As noted by the District of Columbia Court of Appeals, "Under the long-settled law of this jurisdiction, an unlicensed contractor who accepts payments under a home improvement contract prior to completion of the project loses all right to receive or retain any compensation for the work." *Marzullo v. Molineaux*, 651 A.2d 808, 809 (D.C. 1994). *See also Authentic Home Improvements v. Mayo*, No. 90-05, 2006 WL 2687533, at *3 (D.C. Super. Ct. June 2, 2006) ("If this ironclad rule is not respected, the consequences have been held to be equally draconian").

The matter accordingly turns on the second prong of the relevant portion of Section 523 of the Bankruptcy Code, and the question is not if the Appellee has a monetary obligation to Messrs. Kiviti but, rather, whether or not such obligation is for monies "obtained by-- (A) false pretenses, a false representation, or actual fraud…" 11 U.S.C. § 523(a). The Complaint below makes plain that the Appellee only received monies from Messrs. Kiviti – and, thusly, only became indebted to them under the foregoing regulation – by falsely and misleadingly representing his status as a licensed contractor. Appendix at p. 11. This would appear, on its face, to satisfy the statutory rigor.

6

Key to this point is that the monetary obligation became extant – by way of the topical regulatory provision – when the monies were paid to the Appellee. The nature of the work that ensued, the quality of that work, and the timeliness of that work are all immaterial; under District of Columbia law, the elements of a claim for disgorgement were uniformly satisfied when the Appellee – through false pretenses – obtained monies from Messrs. Kiviti.

Supreme Court precedent handily reinforces this reality. The leading case on point is *Cohen v. de la Cruz*, 523 U.S. 213 (1998), where the high court made clear that Section 523 of the Bankruptcy Code "is best read to prohibit the discharge of **any liability arising from a debtor's fraudulent acquisition of money**, property, etc., including an award of treble damages for the fraud." *Id.* at 220–21 (emphasis added).

*Cohen* is particularly instructive in this case because it is focused not on the actual damages caused by a litigant's false representation but, rather, the punitive portion of an ensuing judgment. There, a landlord charged rents in excess of those permitted under a local rent control ordinance. *Id.* at 215. The landlord was ordered to refund tenants the difference between permissible rents and monies actually collected, which he declined to do. *Id.* When the landlord subsequently filed for bankruptcy protection, the tenants sought a finding of nondischargeability not merely as to the excessive rent monies they were lawfully owed but, too, as to "treble

damages and attorney's fees and costs pursuant to the New Jersey Consumer Fraud Act." *Id.* at 215.

The issue on appeal in *Cohen* was not the tenants' entitlement to collect the excessive rents they had paid; the issue was, rather, whether the treble damages (classified as punitive damages) were dischargeable in nature, since they were not correlative to an actual economic loss on the part of the tenants, nor were they comprised of monies the landlord had wrongfully gained. *Id.* at 216- 217.

In assessing the question of whether a debt, arising solely on account of a punitive statutory obligation, could be discharged, the Supreme Court held, *inter alia*:

> The most straightforward reading of § 523(a)(2)(A) is that it prevents discharge of "any debt" respecting "money, property, services, or ... credit" that the debtor has fraudulently obtained, including treble damages assessed on account of the fraud. First, an obligation to pay treble damages satisfies the threshold condition that it constitute a "debt." A "debt" is defined in the Code as "liability on a claim," a "claim" is defined in turn as a "right to payment," and a "right to payment," we have said, "is nothing more nor less than an enforceable obligation." Those definitions "reflec[t] Congress' broad ... view of the class of obligations that qualify as a 'claim' giving rise to a 'debt,'" and they plainly encompass treble damages: An award of treble damages is an "enforceable obligation" of the debtor, and the creditor has a corresponding "right to payment."

*Cohen*, 523 U.S. at 218 (citing *Field v. Mans*, 516 U.S. 59, 61 (1995); quoting 11 U.S.C. § 101(12); 11 U.S.C. § 101(5)(A); *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 558-59 (1990)).

This case is markedly analogous to *Cohen*. The Complaint below plainly alleges the Appellee obtained $58,770.00 from Messrs. Kiviti by directly – and falsely – representing he "held the licensure requisite to perform home improvement work within the District of Columbia." Appendix at p. 8. The Complaint also expressly invokes Section 800.1 of Title 16 of the District of Columbia Municipal Regulations, which calls for an absolute disgorgement of monies in such a circumstance. Appendix at pp. 12-13. In the words of the *Cohen* Court, such an order of disgorgement would be a "liability arising from a debtor's fraudulent acquisition of money, property, etc." *Cohen*, 523 U.S. at 220.

*Cohen*, of course, is not the only case on point. This Honorable Court has considered another analogous situation, where an individual misrepresented his education as an architect and his licensure to work as an architect. *In re Pleasants*, 219 F.3d 372 (4th Cir. 2000). There, just as the Appellee herein falsely held himself out as a licensed contractor, the debtor "erroneously represented that he was an architect who was educated at the University of Virginia School of Architecture." *Id.* at 374.

Remarkably, when the debtor in *Pleasants* was caught, he "apologized and asked for a second chance," to which his creditors "agreed and entered into a Forbearance Agreement." *Id.* Yet the debtor then breached that forbearance agreement and was sued in Fairfax County Circuit Court, with the debtor filing for

9

bankruptcy just days before a judgment could be entered – much like the Appellee herein. *Id.*

The debtor in *Pleasants* argued that his creditors' "claim included only amounts paid by the [creditors] to third parties, such as payments to the architect and builder hired to correct and complete the project." *Id.* at 375. Yet this Honorable Court was unmoved. Even in the absence of a governing regulation like the one at issue in this case, and even though the debtor in *Pleasants* never actually received any of the at-issue money from his creditors, this Honorable Court relied on *Cohen* and held of Section 523 of the Bankruptcy Code, *inter alia*, "This language is broad enough to encompass a situation in which no portion of a creditor's claim was literally transferred to the fraudulent debtor. Indeed, if it were otherwise, the Bankruptcy Code's objectives 'would be ill served.'" *Pleasants*, 219 F.3d at 375 (quoting *Cohen*, 523 U.S. at 222).

There is, too, precedent for a finding of nondischargeability in the prism of a home contracting case. The United States Bankruptcy Court for the Eastern District of Virginia has considered the case of a home contractor who did not misrepresent his licensure, and who actually obtained all necessary permits for a job, but who then carried out the job in such a shoddy and haphazard manner as to clearly violate his contractual obligations to the homeowners, and who failed to pay his subcontractors and materialmen throughout. *In re Levine*, 337 B.R. 840, 844 (Bankr. E.D. Va.

2005). Even with the *Levine* debtor's shortcomings being merely correlative to a failure to perform contractual obligations, the *Levine* Court was "satisfied from the evidence that debtor committed fraud in misrepresenting his ability to perform under the parties' construction contract, that debtor requested payments on the contract, falsely representing his use of the funds, and misrepresented that he had paid his laborers and materialmen." *Id.* at 844.

The contrast between *Levine* and this case is notable: in *Levine* the debtor merely subjectively overstated his abilities and then proved thoroughly inept; here, the Appellee objectively misrepresented his licensure. And it is accordingly difficult to reconcile the *Levine* holding with the same court's holding below herein; ineptitude and contractual breaches certainly appear far less odious – and far less likely to invoke the nondischargeability provisions of Section 523 of the Bankruptcy Code – than the outright, material misrepresentation proffered by the Appellee to Messrs. Kiviti.

Indeed, the only notably inapposite holding on this issue is the one on which the Appellee placed the greatest emphasis below: *In re Carpenter*, 453 B.R. 1 (Bankr. D.D.C. 2011). In that case, the United States Bankruptcy Court for the District of Columbia addressed the precise regulation at issue *sub judice*: 16 DCMR 800.1. *Carpenter*, 453 B.R. at 11. And while the holding ultimately engages a

healthy modicum of dicta contemplating arguments not raised by the parties,[1] the *Carpenter* Court did squarely note that one who relies on a representation of licensure may well have recourse to seek a finding of nondischargeability under the at-issue regulation:

> Wyatt, however, would be entitled to a determination of nondischargeability if she can show that she relied on Carpenter's representation that he was licensed because she had reason to believe that she would be better off, with respect to the harm she suffered, if Carpenter had been licensed.

*Carpenter*, 453 B.R. at 11.

To be sure, the *Carpenter* Court does discuss why such a contention might ultimately fail. *See, supra*, n.1. And this is regrettable, because it means the only time the regulation at issue in this case has been squarely addressed in the prism of a nondischargeability complaint, the discussion was pure speculative dicta. Ultimately, in *Carpenter*, the motion to dismiss was denied and the claim was permitted to proceed to trial. *Carpenter*, 453 B.R. at 13. As noted below, the trial revealed the thoroughly-academic nature of the *Carpenter* dicta, when the plaintiff failed to prevail because, most notably, she "failed to establish that Carpenter

---

[1] The oddity of the *Carpenter* holding can scarcely be understated. After plainly recognizing a specific issue had not been briefed by any of the parties, "and it is appropriate therefore to decide this part of the nondischargeability claim only after the issues in this regard are fully addressed by the parties," the *Carpenter* Court nonetheless proceeded to engage a lengthy discussion of how certain positions might be considered if raised. *Carpenter*, 453 B.R. at 12-13.

misrepresented that he was licensed…" Appendix at p. 31. So while the *Carpenter* case does contain a lengthy contemplation of why reliance on a representation of licensure in the District of Columbia might be foolhardy, and might not give rise to a nondischargeability finding, the case is of extremely limited utility herein.

*Carpenter* is not merely distinguishable but, in many respects, it is plainly inapplicable – in *Carpenter*, the subject motion to dismiss was denied (whereas here Messrs. Kiviti were not permitted to pursue their claim); in *Carpenter*, the underlying allegation of licensure being misrepresented was ultimately not proven at trial (whereas here Messrs. Kiviti believe they can handily make such a showing); and in *Carpenter*, the Court seems to depart appreciably from *Cohen*, *Pleasants*, *Levine*, and their respective progeny, making the contemplative ruling an outlier unto itself.

At core, this case returns to the plain language of Section 523 of the Bankruptcy Code and the equally plain guidance of the *Cohen* Court: If the Appellee owes money to Messrs. Kiviti, and if that debt stems from an obligation arising out of the Appellee's making false pretenses or false representations, the obligation is nondischargeable. Messrs. Kiviti have clearly alleged the Appellee lied about being licensed, that they would not have hired him but for this misrepresentation, and that he accordingly would not now be indebted to them under the District of Columbia's regulatory scheme but for this representation. Messrs. Kiviti have accordingly well

stated a claim for nondischargeability, and should be permitted to pursue such at trial.

### b. The District Court Erred in Considering the Distinction Between Loss Causation and Transaction Causation

One of the more unusual aspects of the District Court's holding below is an assertion "Appellants have alleged transaction causation … but not loss causation…" Appendix at p. 123. This finding is problematic for two reasons: (i) the distinction between loss causation and transaction causation has never been recognized in this Circuit in connection with a nondischargeability action; and (ii) in the prism of this case, the distinction is one without a difference.

Initially, it bears notation the contrast between these two varieties of causation is ordinarily – albeit not always – reserved for contemplation of alleged violations of the Securities Exchange Act of 1934 and the various regulations promulgated thereunder. *See, e.g.*, *In re Rickel & Associates, Inc.*, 272 B.R. 74, 91 (Bankr. S.D.N.Y. 2002) ("The securities fraud plaintiff must plead both transaction causation and loss causation. Transaction causation corresponds to reliance, i.e., the plaintiff would not have entered into the transaction but for the fraud.") (citing *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 186 (2d Cir. 2001); *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 96 (2d Cir. 2001)); *In re Chui*, 538 B.R. 793, 809 (Bankr. N.D. Cal. 2015), aff'd sub nom. *Tradex Glob. Master Fund Spc Ltd. v. Chui*, 559 B.R. 520 (N.D. Cal. 2016), aff'd sub nom. *Tradex Glob. Master*

*Fund SPC LTD v. Chui*, 702 Fed. Appx. 632 (9th Cir. 2017) ("The causation element for Rule 10b–5 actions includes 'both transaction causation, that the violations in question caused the plaintiff to engage in the transaction, and loss causation, that the misrepresentation or omissions caused the harm.'") (quoting *Livid Holdings Ltd, v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 949 (9th Cir. 2005)).

The few times the distinction has been tested in the prism of a nondischargeability complaint, the reaction has been mixed. *Compare United Nations Fed. Credit Union v. Johnston*, 1995 WL 662407, at *1 (S.D.N.Y. 1995) ("The plaintiff asserts and the U.S. Bankruptcy Court found that 'the focus of [[[11 U.S.C. section 523(2)(a)] is the transaction...' not the loss causation. Defendant cites no cases to support her assertion to the contrary."), *with In re Lovato*, 442 B.R. 810, 814–15 (Bankr. D.N.M. 2011) ("One element of a section 523(a)(2)(A) claims is the proof that the debtor's representation *caused* the creditor to sustain a loss.") (citing *In re Young*, 91 F.3d 1367, 1373 (10th Cir. 1996)) (emphasis in original).

While neither this Honorable Court nor any court within this Circuit have ever weighed in on the applicability of the distinction between loss causation and transaction causation, in the prism of a nondischargeability action (as best as undersigned counsel can discover), such is ultimately also immaterial *sub judice*. Because the at-issue ordinance gives rise to an immediate entitlement to damages as soon as an unlicensed contractor is paid – without regard to the quality of any work

15

thereafter performed – the monetary loss triggering the compensable damage is contemporaneous with the transaction itself. In the context of this regulation, there cannot – as a matter of law – be any temporal or elemental distinction between the causation (relying on a false representation about licensure) and the loss (tendering money in reliance on the falsity).

Section 523 of the Bankruptcy Code does not require a litigant maintain a claim for fraud in accord with the prevailing common law of one state or another. Rather, the language prophylactically encompasses *all* entitlements to money stemming from false pretenses and false representations. The scope is accordingly much broader than simple fraud, with the nondischargeability rigor attaching not to a particular cause of action – or even type of action (*i.e.,* tort, contract) – but, rather, to *all* actions in which money is obtained through the advancement of a falsity, regardless of whether or not falsity is an element thereof. In requiring a showing of loss causation, the District Court herein looked too narrowly, focusing on claims for fraud and the case law attendant thereto; as the Supreme Court showed in *Cohen*, this is an error – any entitlement to a return of monies (or even a punitive enhancement stemming therefrom) is nondischargeable so long as the debtor obtain said monies through one or more acts of dishonesty.

## VIII. Conclusion

WHEREFORE, Messrs. Kiviti respectfully pray this Honorable Court (i) reverse the order of the District Court; (ii) remand this case to the District Court with instructions to vacate the order of the Bankruptcy Court and remand this matter to the Bankruptcy Court so litigation may proceed on the claim for nondischargeability; and (iii) afford such other and further relief as may be just and proper.

## IX. Request for Oral Argument

The dischargeability of regulatory disgorgements stemming from acts of dishonesty is a novel area of law not previously addressed by this Honorable Court. There is also no Fourth Circuit precedent for the applicability, *vel non*, of loss causation to dischargeability actions in bankruptcy. The Appellants accordingly suggest oral argument would be beneficial *sub judice*.

## X. Signature

Respectfully submitted,

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Virginia Bar No. 81556
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy #665
Henderson, Nevada 89012
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Appellants*